**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CURTIS TYRONE THOMAS,

    Petitioner,

vs.

A. P. KANE, Warden,

    Respondent.

No. C 05-2318 PJH (PR)

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

    This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. § 2254. The petition is directed to a denial of parole.

    The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer, a memorandum of points and authorities in support of it, and exhibits. Petitioner has responded with a traverse. For the reasons set forth below, the petition will be denied.

## BACKGROUND

    On January 23, 1984, a jury in the Superior Court for the County of Los Angeles found petitioner guilty of second degree murder with use of a firearm, and robbery. He was sentenced to fifteen years to life in prison; the term imposed for the robbery and the two-year enhancement for the gun use were stayed. (Resp. Ex. 2 at 2.)

    Petitioner, represented by counsel, appeared for his eighth parole hearing on

December 15, 2003 before the Board, which granted parole. (Resp. Ex. 3.) On May 6, 2004, the Governor of California reviewed the Board's decision and reversed the Board's grant of parole. (Resp. Ex. 4 at 4.) The Governor based his decision upon the nature of the commitment offense and prior social history, a lack of remorse, insufficient parole plans and the District Attorney's opposition to parole. (*Id.*) In his review of the Board's decision finding petitioner suitable for parole, the Governor summarized the facts of the commitment offense as follows:

> In the early morning hours of April 8, 1982, 17-year-old Curtis Thomas and his crime partner, Craig Whitfield, both gang members of the 89th Street Bloods, participated in an armed carjacking, robbing at gunpoint Phyllis Mosely and Charles Ford before taking off in Ms. Mosely's black Thunderbird.
>
> About 12 hours later, Mr. Thomas and Mr. Whitfield were standing with a group of males on a street corner. A newspaper-delivery truck drove by and Rodney Green, who was tossing newspapers from the back of the truck, reportedly displayed a hand sign associated with a rival gang. Mr. Thomas immediately yelled, "Let's go bust." He and Mr. Whitfield, driving a black Thunderbird, then chased the truck, forcing it to the curb. Mr. Thomas, who was in the passenger seat, pointed a gun out of the window and fired three shots toward the back of the truck - striking Mr. Green in the chest. The two then sped off in the Thunderbird. Despite the efforts of Mr. Madison, the driver of the delivery truck, Mr. Green died while still in the truck. Mr. Thomas subsequently was heard saying, "We got him. I got him."
>
> Ms. Mosely identified Mr. Thomas as one of the men who robbed her and took her car. Mr. Madison identified Mr. Thomas as the passenger of the car that chased his truck and shot Mr. Green. The police later identified a Thunderbird found in an alley as Ms. Mosely's and determined that it was used in the shooting of Mr. Green. Several eye-witnesses supported this determination.

(Resp. Ex. 4 at 1.)

Following the Governor's reversal of the Board's decision, petitioner filed a petition for writ of habeas corpus in superior court, which denied the petition on October 26, 2004. (Resp. Ex. 14.) Petitioner subsequently sought relief in the court of appeal, which denied his petition for habeas relief, and the state supreme court, which summarily denied the

2

petition for review.  (Resp. Exs. 15 & 16.)  Thereafter, petitioner filed this federal petition for a writ of habeas corpus.  Respondent does not dispute that the petition is timely and presents claims that were exhausted in state court.  The petition is submitted for a decision on the merits.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and

convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court.  *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do.  *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When, as here, there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).  Thus, in order to determine whether the state court decisions were contrary to, or an unreasonable application of, clearly established federal law, the court in this case looks to the opinion of the California Court of Appeal denying the state habeas petition.  (Resp. Ex. 15.)

**DISCUSSION**

As grounds for federal habeas relief, petitioner asserts that his due process rights were denied when the Governor reversed the Board's decision to grant parole based on the unchanging circumstances of his crime.

**I.    Due Process in Parole Suitability Determinations**

**A.    Some Evidence Standard of Judicial Review**

The Ninth Circuit has determined that a California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings.  *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (citing *Board of Pardons v. Allen*, 482 U.S. 369 (1987); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S.

1 (1979)).  *See also Irons v. Carey*, 505 F.3d 846, 851 (9th Cir.), *reh'g and reh'g en banc denied*, 506 F.3d 951 (9th Cir. 2007); *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006), *reh'g and reh'g en banc denied*, No. 05-16455 (9th Cir. Feb. 13, 2007); *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003).

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision.  *Sass*, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985)).  *See also Irons*, 505 F.3d at 851.  "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board.  *Sass*, 461 F.3d at 1128 (quoting *Hill*, 472 U.S. at 455-56).  The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'"  *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

Respondent contends that an inmate is entitled to only minimal protections to satisfy due process in a parole proceeding.  Citing *Greenholtz*, Respondent contends that due process in state parole procedures is satisfied merely if they afford the inmate an opportunity to be heard and a decision informing him why he did not qualify for parole release.  The Ninth Circuit, however, has held that requiring less than the some evidence standard "would violate clearly established federal law because it would mean that a state could interfere with a liberty interest - that in parole - without support or in an otherwise arbitrary manner."  *Sass*, 461 F.3d at 1129.  Thus, the some evidence standard of *Superintendent v. Hill* is clearly established law in the context of parole denial for purposes of federal habeas review.  *Ibid.*

**B.    State Regulations Governing Parole Suitability**

In assessing whether the Board's denial of parole was supported by some evidence, the court's "analysis is framed by the statutes and regulations governing parole suitability

5

determinations in the relevant state." *Irons*, 505 F.3d at 851 (citing *Biggs*, 334 F.3d at 915). "Accordingly, here we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' in [petitioner's] case constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*, 472 U.S. at 454." *Id.*

Under California law, "[t]he Board must determine whether a prisoner is presently too dangerous to be deemed suitable for parole based on the 'circumstances tending to show unsuitability' and the 'circumstances tending to show suitability' set forth in Cal. Code. Regs., tit.15 § 2402(c)-(d)." *Id.*

Title fifteen, section 2402, of the California Code of Regulations sets forth the criteria for determining whether an inmate is suitable for release on parole. The circumstances tending to show that a prisoner is unsuitable include the following: (1) the commitment offense, where the offense was committed in "an especially heinous, atrocious or cruel manner;" (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others;" (4) commission of "sadistic sexual offenses;" (5) "a lengthy history of severe mental problems related to the offense;" and (6) "serious misconduct in prison or jail." Cal. Code. Regs., tit. 15 § 2402(c). The circumstances tending to show that a prisoner is suitable for parole include the following: (1) the prisoner has no juvenile record; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) the prisoner committed his crime as the result of significant stress in his life; (5) the prisoner suffered from Battered Woman Syndrome at the time of committing the crime; (6) the prisoner lacks any significant history of violent crime; (7) the prisoner's present age reduces the risk of recidivism; (8) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release;" and (9) institutional activities "indicate an enhanced ability to function within the law upon release." Cal. Code. Regs., tit. 15 § 2402(d).

**C.    *Biggs* Challenge**

Petitioner argues that the Board improperly relied on the unchanging circumstances of the commitment offense. Petitioner relies on *Biggs*, where the Ninth Circuit suggested in dicta that sole reliance on the commitment offense could raise "serious questions" about a state prisoner's liberty interest in parole. *See Biggs*, 334 F.3d at 916-17. *Biggs* upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that the value of the criminal offense fades over time as a predictor of parole suitability: "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Biggs*, 334 F.3d at 916-17.

As the Ninth Circuit noted in *Sass*, "*Biggs* affirmed a denial of parole after holding that the circumstances of the offense and conduct prior to imprisonment constituted some evidence to support the Parole Board's decision." *Sass*, 461 F.3d at 1126 (citing *Biggs*, 334 F.3d at 917). *See Biggs*, 334 F.3d at 916 ("As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law.").

The Ninth Circuit has expressed competing views on *Biggs* in subsequent panel decisions. In *Sass*, the Ninth Circuit held that evidence of Sass's prior offenses and the gravity of his commitment offenses constituted some evidence to support the Board's decision. 461 F.3d at 1129. Acknowledging the cautionary statements in *Biggs* concerning the potential for a due process violation by continued reliance in the future on immutable factors, *Sass* criticized that part of the opinion as improper speculation about how future parole hearings could proceed. *Ibid.*

In *Irons*, however, the Ninth Circuit echoed the concern raised in *Biggs* and expressed its "hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his

7

rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." *Irons*, 505 F.3d at 854 (citing *Biggs*, 334 F.3d at 917). Although the court determined that the Board's unsuitability finding was supported by "some evidence" that Irons's crime was especially cruel and callous, the *Irons* panel pointed out that in the cases holding that sole reliance on the commitment offense did not violate due process, namely, *Irons*, *Sass* and *Biggs*, "the decision was made before the inmate had served the minimum number of years required by his sentence." *Irons*, 505 F.3d at 852-54. *Irons* reasoned that due process was not violated when these prisoners were deemed unsuitable for parole "prior to the expiration of their minimum terms," even if they had demonstrated substantial evidence of rehabilitation. *Id.* at 854.

Recently, the Ninth Circuit held rehearing en banc in *Hayward v. Marshall*, 512 F.3d 536 (9th Cir.), *reh'g en banc granted*, 527 F.3d 797 (9th Cir. 2008), which presented a state prisoner's due process habeas challenge to the denial of parole. The three-judge *Hayward* panel had concluded that the gravity of the commitment offense had no predictive value regarding the petitioner's suitability for parole, and held that the governor's reversal of parole was not supported by some evidence and resulted in a due process violation. 512 F.3d at 546-47. The Ninth Circuit has not yet issued an en banc decision in *Hayward*; since holding rehearing en banc on June 24, 2008, the Ninth Circuit has ordered briefing on the questions, *inter alia*, whether the order granting rehearing en banc should be vacated and submission of the matter deferred, pending the California Supreme Court's decisions in *In re Lawrence*, No. S154018 and *In re Shaputis*, No. S155872, both of which cases were argued on June 4, 2008. *Hayward v. Marshall*, No. 06-55392, slip op. at 2 (9th Cir. July 10, 2008).

Unless or until the en banc court overrules the holdings of the earlier Ninth Circuit panel decisions in *Biggs*, *Sass* and *Irons*, these cases hold that California's parole scheme creates a federally protected liberty interest in parole and therefore a right to due process which is satisfied if some evidence supports the Board's parole suitability decision. *Sass*, 461 F.3d at 1128-29. These cases also hold that the Board may rely on immutable events,

8

such as the nature of the conviction offense and pre-conviction criminality, to find that the prisoner is not currently suitable for parole, *Sass*, 461 F.3d at 1129.  *Biggs* and *Irons* further suggest, however, that over time, the commitment offense and pre-conviction behavior become less reliable predictors of danger to society such that repeated denial of parole based solely on immutable events, regardless of the extent of rehabilitation during incarceration, could violate due process at some point after the prisoner serves the minimum term on his sentence.  *See Irons*, 505 F.3d at 853-54.

Petitioner has failed to establish the predicate for his *Biggs* claim.  For one thing, the denial of parole was not solely based on the circumstances of his offense, but also based on the Governor's finding that petitioner lacked remorse and did not have sufficient parole plans, as well as upon the District Attorney's objection to petitioner's release.  In any event, even assuming for purposes of this discussion that *Biggs* and *Irons* recognized an abstract due process right not to have parole repeatedly denied on the basis of the facts of one's crime and one's criminal history, and in the face of extensive evidence of rehabilitation, and also assuming arguendo that the right was violated in petitioner's case, petitioner still cannot obtain relief on this theory, because as there is no clearly-established United States Supreme Court authority recognizing a "*Biggs* claim."  The state courts' rulings therefore could not be contrary to, or an unreasonable application of, clearly-established Supreme Court authority within the meaning of 28 U.S.C. § 2254(d)(1).

### D.     Some Evidence of Parole Unsuitability

In his 2004 decision, the Governor considered several factors favoring petitioner's suitability for parole, including petitioner's favorable institutional behavior, lack of any serious rules violations in prison, his vocational and educational training in prison, his participation in self-help and substance abuse programs, his renunciation of gang affiliation, and his close family ties and substantial support from relatives and community members.  (Resp. Ex. 4 at 2.)  However, the Governor found that these positive factors were outweighed by the following factors indicating unsuitability: (1) petitioner lacks any "actual" remorse; (2) insufficient parole plans; (3) the commitment offense was "especially heinous,"

9

demonstrated an "exceptionally callous disregard for human suffering," and was a "conscienceless and particularly depraved crime," and (4) the Los Angeles County District Attorney opposed parole. (*Id.* at 3-4.)

In reviewing the Governor's decision, the superior court found insufficient evidence that petitioner lacked remorse or had insufficient parole plans. (Resp. Ex. 14 at 1-2.) The superior court found, however, that the record contains "some evidence" to support the Governor's decision to deny parole because the circumstances of the commitment offense were "more than the minimum necessary to sustain a conviction for second-degree murder." (*Id.* at 1 (citing 15 Cal. Code Regs. § 2402(c)(1).) The California Court of Appeal did not address the issues of petitioner's remorse or parole plans, but found "some evidence" to support the decision to deny parole because the Governor "could properly conclude" that the killing was "especially heinous." (Resp. Ex. 15 at 1.)

### a. Commitment Offense and Prior History

The state regulations provide that the following factors may be considered in determining whether the commitment offense was "especially heinous, atrocious or cruel:" (A) multiple victims were attacked, injured or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated during or after the offense; (D) the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; (E) the motive for the crime is inexplicable or very trivial in relation to the offense. Cal. Code Regs., tit. 15 § 2402(c)(1).

The crimes of which petitioner was convicted involved multiple victims. (Resp. Ex. 4 at 1.) Petitioner and his Whitfield carjacked a Thunderbird from two people at gunpoint, and then used the Thunderbird to chase down and shoot at a delivery truck with two people inside – both the driver and the passenger, Green, who was shot and killed. (*Id.*) The murder also evinces an exceptionally callous disregard for human suffering. To begin with, petitioner had multiple opportunities to cease criminal activity but chose not to, such as after the initial theft of the Thunderbird, after petitioner and Green exchanged gang signs,

10

and then while chasing after Green. (*Id.*; Resp. Ex. 3 at 62.)[1]  In addition, petitioner created a substantial risk of serious injury to people other than the victim by chasing and firing at the truck in a public street where a bystander could have been hurt by a stray bullet or by the truck if petitioner had shot the driver. (*Id.*)  Lastly, the motive for the crime was exceedingly trivial in that petitioner's suspicion that the victim was simply a member of a rival gang hardly provides any conceivable basis for petitioner to kill him. (*Id.*)

There was also evidence that petitioner had a difficult social history prior to incarceration. Petitioner committed the murder when he was 17. Previously, he joined a gang at age 15, and he had a juvenile conviction for burglary, as well as juvenile arrests for possession of a dagger, burglary, robbery and possession of marijuana. (Resp. Ex. 4 at 1.)

### b.  Remorse and Parole Plans

The state courts found that the record did not support the Governor's findings of a lack of remorse or sufficient parole plans. A psychiatric evaluation found that petitioner's "remorse was obvious, as well as appropriate and genuine," and at the 2003 hearing petitioner stated that he accepted "full responsibility" for his actions, offered "no excuse," asked for "forgiveness," and "repent[ed]." (Resp. Ex. 3 at 53, Ex. 12 at 3.)  With respect to his parole plans, the mother of his daughter wrote a letter stating that she welcomed him to live with her, that she would provide for him and that she would offer him transportation to and from work, and the Islamic Center of Los Angeles was "ready to receive" petitioner and offer him a job upon his release. (Resp. Ex. 3 at 18-19.)  In light of this evidence, this court agrees with the state court that the Governor's finding of no remorse and insufficient parole plans was not supported by the record.

### c.  District Attorney's Opposition

---

[1] The California Court of Appeal further found that there was evidence of premeditation based upon which petitioner could have been convicted of first degree murder. (Resp. Ex. 15.)  Indeed, petitioner had an opportunity to deliberate after exchanging gang signs and prior to deciding to retrieve the Thunderbird and chase after Green in order to shoot and kill him. State law permitted the Governor to reverse a Board decision granting parole based in part on evidence of premeditation and deliberation even though the jury did not find beyond a reasonable doubt such premeditation and deliberation. (Resp. Ex. 15 (citing *In re Rosenkrantz*, 29 Cal. 4th 616, 679 (2002).)

11

1    A member of the Los Angeles County District Attorney's Office opposed granting 2 parole. (*Id.* at 44.) He noted the fact that petitioner committed the carjacking immediately 3 prior to the murder, as well as petitioner's juvenile offenses committed prior to the murder.

4    In sum, contrary to petitioner's claim that the Governor's's decision violated his right 5 to due process, the record contains some evidence to support the Governor's finding that 6 petitioner presented a risk of danger to others if released. The evidence in the record 7 showed that the commitment offense was especially cruel, petitioner had an unstable social 8 history, and the prosecutor opposed release on parole all reasonably indicate that petitioner 9 would present an unreasonable risk of harm to others if he had been released on parole. 10 Thus, the state courts' denial of habeas relief on petitioner's due process claim was neither 11 contrary to nor an unreasonable application of clearly established federal law.

## II.    *Apprendi* Claim

13    In his traverse, petitioner raises a new claim that by denying parole, the Governor 14 exposed petitioner to a sentence in excess of the relevant statutory maximum for second 15 degree murder in violation of his right to trial by jury under *Apprendi v. New Jersey*, 530 16 U.S. 466, 490 (2000). This claim was not presented in the petition, and petitioner may not 17 raise new claims for relief in the traverse. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 18 507 (9th Cir. 1994), *cert. denied*, 514 U.S. 1026 (1995). Nor has petitioner demonstrated 19 that he has exhausted the remedies available in state court. *See* 28 U.S.C. § 2254(b), (c).

20    Although petitioner did not raise properly the *Apprendi* claim or exhaust his 21 remedies, the court denies relief on the merits of this claim. 28 U.S.C. § 2254(b)(2). The 22 statutory maximum for petitioner's crime, murder in the second degree, is life 23 imprisonment. Cal. Penal Code § 190(a). No additional facts must be found beyond those 24 which were found by the jury at petitioner's trial in order for him to be imprisoned for life. 25 Petitioner has no right to a jury trial in connection with parole determinations before the 26 expiration of his life sentence. *See Blakely v. Washington*, 542 U.S. 296, 308-09 (2005) 27 ("indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) 28 may implicitly rule on those facts he deems important to the exercise of his sentencing

1  discretion"). This claim is therefore denied.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: January 2, 2009

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.05\THOMAS2318.parole_deny.wpd